2006-NMCA-124

144 P.3d 103

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**John C. DAY III, Defendant–Appellant.**

**No. 25,290.**

Court of Appeals of New Mexico.

July 12, 2006.

Certiorari Granted, No. 29,953,
Sept. 13, 2006.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} The State has filed a motion for rehearing and a motion and renewed motion for an immediate stay. The panel members of the original panel have considered the State's motions and hereby deny those motions. We withdraw the opinion filed June 1, 2006, and this opinion is substituted in its stead.

{2} Defendant John Day appeals his conviction for driving while intoxicated (DWI) based on a determination that his breath alcohol content was .08 or more at the time of driving. The jury inferred guilt from evidence of Defendant's eyes, speech, and behavior and a .08 breath test result taken one hour and six minutes after he was driving. We hold that absent scientific evidence of the alcohol absorption and elimination processes tied to the facts that must be considered in scientifically evaluating Defendant's alcohol absorption rate, the jury could not have rationally inferred that Defendant had a .08 alcohol content at the time of driving based on a .08 breath test reading taken an hour and six minutes later. Because the State failed to prove the required nexus between Defendant's later-taken .08 breath test result and his alcohol level at the time he was driving, we reverse Defendant's conviction based on insufficient evidence.

{3} In holding as we do, we note that many traffic stop circumstances exist in which the State seeks to prove a breath alcohol content (BAC) of .08 or more at the time of driving based on the result of a later-taken test reading. In many of these cases the later reading may be at or not far above .08 BAC. And, from a review of literature on the subject, it is equally apparent that in these instances, a scientific retrograde extrapolation process is necessary in order to arrive at a rational inference of the BAC level at the time of driving. "Retrograde extrapolation is the computation back in time of the blood-alcohol level—that is, the estimation of the level at the time of driving based on a test result from some later time." *Mata v. State*, 46 S.W.3d 902, 908–09 (Tex. Crim.App.2001). The literature also shows the difficulties of proof even utilizing the scientific process. The problem of proof raises a question as to the effectiveness of currently used methods to prove a BAC level at the time of driving as New Mexico law requires. The problem of proof also raises the question of whether a new statute is needed to overcome the difficulty of proof. For purposes of our discussion, there is no difference between alcohol test results produced by either blood or breath tests when used to prove a .08 BAC at the time of driving.

{4} As we discuss later in this opinion, under the current state of the law, equipment and methods of measuring alcohol level in New Mexico, in many cases requiring relation-back evidence, the State will need to present scientific evidence permitting retrograde extrapolation in order for a jury to rationally and reasonably infer a .08 BAC at the time of driving from a later-taken BAC reading. As we also discuss later in this opinion, factual evidence relating to the individual characteristics of the accused will likely be required, together with such evidence as times and amounts of consumption of alcohol and food, and the length of delay between that consumption and the BAC test. Such facts will normally be necessary considerations for a reliable scientific absorption-elimination analysis in retrograde extrapolation.

## BACKGROUND

{5} Defendant was pulled over by a police officer for an unilluminated license plate. The officer had not observed any erratic driving or improper driving behavior. The officer observed that Defendant had bloodshot and watery eyes, thought Defendant's speech was a little slurred, and smelled an odor of alcohol coming from Defendant.

{6} Based on his observations, the officer conducted one-leg stand and the heel-to-toe

field sobriety tests which, in the officer's judgment, Defendant failed. The officer arrested Defendant. One hour and six minutes after the traffic stop, Defendant's BAC was measured at .08. In a second test a few minutes later it again measured .08. Defendant was charged with DWI–Third Offense in violation of NMSA 1978, § 66–8–102(F)(2) (2003) (amended 2004 and 2005). He was also charged with an open container violation under NMSA 1978, § 66–8–138(C) (2001), for having an open can of beer in the vehicle. The testimony at trial was that his friend, a passenger in the vehicle, was the one who brought the beer into the vehicle.

{7} More particularly as to the DWI charge, Defendant was charged in one count with "operat[ing] a motor vehicle while under the influence of intoxicating liquor . . . and/or in the alternative operat[ing] a motor vehicle with an alcohol concentration of eight one-hundredths (.08) or more in his breath or blood[.]" *See* § 66–8–102(A), (C)(1). Under Section 66–8–102(A), the State would have to prove that Defendant was "less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to [himself] and the public[.]" UJI 14–4501 NMRA; *State v. Martinez,* 2002–NMCA–043, ¶ 7, 132 N.M. 101, 45 P.3d 41. However, under Section 66–8–102(C), the State need only prove a .08 or more BAC level at the time of driving. UJI 14–4503 NMRA; *Martinez,* 2002–NMCA–043, ¶ 7, 132 N.M. 101, 45 P.3d 41. At trial, the State did not present expert testimony.[1]

{8} When the State rested its case, Defendant moved for a directed verdict on the charge of driving with a .08 or more BAC, arguing that the borderline reading of .08 was insufficient without extrapolation evidence from which Defendant's BAC at the time of driving could be rationally inferred. The district court denied the motion. The court specifically determined that "[i]n light of [the] fact that the breath test was taken within an hour I don't think I need extrapolation evidence."

{9} Defendant then testified that while preparing dinner for himself and two roommates, Defendant drank two twelve-ounce cans of beer. He drank another during dinner. Right after dinner, he drove with a roommate to buy cigarettes. He was pulled over perhaps seven to ten minutes after he had finished dinner. Defendant also presented the expert testimony of Dr. Edward Reyes, a pharmacologist with expertise in alcohol metabolism. Dr. Reyes testified at some length about the biological processes by which alcohol is absorbed, reaches its concentration peak, and is metabolized in the body and eliminated. In describing the process, Dr. Reyes indicated that a person's BAC rises during the period of absorption and, after the alcohol hits a concentration point at which BAC is at its peak, BAC begins to decline during metabolism and elimination. Defendant's expert testified that he believed that Defendant was in the absorption phase at the time of the stop. He also answered hypothetical questions, as follows:

Q. . . . [I]f somebody ate a dinner, drank a few beers, immediately got into their vehicle and got onto the roadway and got stopped by a police officer and was later taken to a police station and tested, at the time of driving would you expect that person to be in the absorption phase or the elimination phase?

A. In the absorption phase.

Q. And why would that be?

A. Because he's got a full pot of food and alcohol in his stomach and he hasn't had time to have that stomach empty into the small intestine and have it absorbed.

Q. And I'll add to the facts of the hypothetical, from the time of driving to the time of testing was an hour to an hour and 15 minutes. Under those same facts of the hypothetical, would you expect somebody's blood alcohol level to be lower or higher at the time of driving than it was at the time of testing?

A. I would suspect his blood alcohol level to be lower when he was driving than at the time of testing.

---

1. The State has offered an expert to prove a BAC through retrograde extrapolation in at least one reported case. *See State v. Silago,* 2005–NMCA–100, ¶¶ 1, 3–11, 138 N.M. 301, 119 P.3d 181.

{10} At the close of his case, Defendant argued that the State failed to present sufficient evidence of Defendant's BAC at the time of driving. The court reiterated it would not grant a directed verdict. The court stated that it was within the province of the jury to disbelieve the testimony of the expert, including the expert's belief that Defendant was in the absorption phase. Further, the court stated that case law indicates that if the BAC test occurs within two hours of driving, extrapolation evidence was not necessary.

{11} The jury was instructed on the two alternative DWI charges, namely: (1) driving under the influence of intoxicating liquor (impaired to the slightest degree), a violation of Section 66–8–102(A), and (2) driving with a BAC of .08 or more, a violation of Section 66–8–102(C)(1) (hereafter referred to as the "BAC charge"). The jury was instructed to choose one or the other of these charges—it could not convict Defendant of both. The jury chose and convicted Defendant on the BAC charge. Defendant was also convicted on the open container charge.

{12} Defendant appeals the conviction on the BAC charge for lack of sufficient evidence. Defendant also appeals on the ground the district court erred in failing to dismiss pursuant to the six-month rule contained in Rule 5–604(B) NMRA. Because we reverse the .08 DWI conviction based on insufficient evidence, we do not address the six-month rule issue. Defendant does not appeal his conviction on the open container charge.

## DISCUSSION

{13} In reviewing a BAC conviction for the sufficiency of the evidence, we "must resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Notah–Hunter*, 2005–NMCA–074, ¶ 13, 137 N.M. 597, 113 P.3d 867 (internal quotation marks and citation omitted), *cert. denied*, 2005–NMCERT–006, 137 N.M. 766, 115 P.3d 229. To convict under Section 66–8–102(C)(1), the State must prove that the driver's BAC was .08 or more at the time the driver was operating the vehicle. *State v.*

*Baldwin*, 2001–NMCA–063, ¶ 7, 130 N.M. 705, 30 P.3d 394; *see* UJI 14–4503. The proof must be beyond a reasonable doubt, which is "doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of life." *State v. Garcia*, 2005–NMSC–017, ¶¶ 9–10, 138 N.M. 1, 116 P.3d 72 (quoting UJI 14–5060 NMRA, and stating that the instruction adequately expresses the definition of reasonable doubt).

### Nexus Evidence Is Required

{14} Proof of a driver's BAC level at the time of driving is complicated by the inevitability of some delay occurring between the time of driving and the time of the BAC test. *See Martinez*, 2002–NMCA–043, ¶ 11, 132 N.M. 101, 45 P.3d 41. When delay occurs and the issue is contested, the State must prove a nexus between the time of driving and the time of the BAC test, such that the jury can rationally infer that the driver's BAC at the time of driving was .08 or greater. *See Baldwin*, 2001–NMCA–063, ¶ 8, 130 N.M. 705, 30 P.3d 394.

{15} The State argues that no nexus evidence is required when a .08 BAC test reading is obtained "within a reasonable amount of time after driving." It asserts that "Section 66–8–102(C)(1) creates a statutory presumption of intoxication when no significant delay occurs between driving and testing." We reject this argument. The words "reasonable amount of time" and "no significant delay" are much too uncertain for any presumption or for a rational jury inference of a .08 BAC or more at the time of driving. *See Baldwin*, 2001–NMCA–063, ¶ 8, 130 N.M. 705, 30 P.3d 394 ("Timing is an essential element of the crime. The State must prove a nexus between a BAC of 0.08 or more and the time defendant operated a motor vehicle." (internal quotation marks and citation omitted)); *see also* UJI 14–4503 (making the critical time the time the driver is operating the vehicle). Furthermore, we have never held that the State does not have to prove a nexus based on a particular time period, even a small one, between the time of driving and

the BAC test when the defendant has raised the issue.

{16} It is true that the New Mexico Legislature has determined that a scientifically obtained BAC level of .08 is a per se violation of law sufficient to convict for DWI. *See* § 66–8–102(C)(1); *State v. Christmas*, 2002–NMCA–020, ¶ 18, 131 N.M. 591, 40 P.3d 1035 (stating that Section 66–8–102(C) "describes the per se offense of driving with 'an alcohol concentration of eight one-hundredths [.08] or more in his blood or breath' "); *see also* NMSA 1978, § 66–8–107(A) (1993) (relating to BAC obtained by chemical breath and blood tests "approved by the scientific laboratory division of the department of health"). However, when the delay in testing necessarily gives rise to questions requiring consideration of alcohol absorption and elimination in order to arrive at an earlier BAC level beyond a reasonable doubt, the State must show a nexus through appropriate relation-back evidence. *See, e.g., Baldwin*, 2001–NMCA–063, ¶¶ 8, 15–18, 130 N.M. 705, 30 P.3d 394.

### The Sufficiency of the Evidence and Necessity for Extrapolation Science

{17} With the State's burden to establish a nexus comes the commensurate burden of producing sufficient admissible evidence to prove, beyond a reasonable doubt, that the accused's BAC at the time of driving is .08 or more using an alcohol test reading taken at a later time. *See generally,* Jim Fraiser, Annotation, *Admissibility and Sufficiency of Extrapolation Evidence in DUI Prosecutions,* 119 A.L.R. 5th 379 (2004). The sole issue before us is the sufficiency of that evidence. This issue calls for discussion of the importance of, and necessity for, scientific analysis of metabolism of alcohol in the human body through the processes of absorption and elimination.

{18} Knowledge about the processes of alcohol absorption and elimination is important, if not essential, to understanding BAC levels. *See State v. Hughey*, 2005–NMCA–114, ¶¶ 3–4, 138 N.M. 308, 119 P.3d 188; *Martinez*, 2002–NMCA–043, ¶ 14, 132 N.M. 101, 45 P.3d 41; Edward F. Fitzgerald, *In-*

*toxication Test Evidence* § 2:1 (2d ed.2003) (stating that in interpreting a BAC test result it is essential to understand the nature of BAC, including "how it comes into being in the first instance, how it rises, peaks, and falls, and how the alcohol is eventually eliminated from the body"). As we indicated in *Martinez*, "an individual's BAC continues to rise for some unknown period of time after consuming alcohol[,]" and "it takes time for alcohol to be absorbed into the bloodstream, depending on any number of physiological and situational factors." 2002–NMCA–043, ¶ 14, 132 N.M. 101, 45 P.3d 41; *see* Fitzgerald, *supra,* §§ 2:1 to 4:15 (explaining the physiology of alcohol consumption and problems predicting BACs, and describing the impact of physiological differences). "[I]t is possible that a BAC at the time of driving may actually be lower, not higher, than at the time of a subsequent BAC test." *Martinez*, 2002–NMCA–043, ¶ 14, 132 N.M. 101, 45 P.3d 41. On the other hand, BAC at some point will peak and decline to a level that is lower at the time of the test than that at the time of driving. *See id.* ¶ 15.

■ {19} A .08 BAC conviction can be based on inferences rationally drawn when an expert's explanation of the alcohol absorption and elimination processes has been presented to a jury, *along with* sufficient facts that are necessary ingredients for an absorption-elimination analysis. See *Christmas*, 2002–NMCA–020, ¶¶ 27–28, 131 N.M. 591, 40 P.3d 1035; *Martinez*, 2002–NMCA–043, ¶¶ 15–17, 132 N.M. 101, 45 P.3d 41. A court evaluation of the reliability of retrograde extrapolation evidence presented in expert testimony should take into consideration the relevant factual circumstances. *Mata*, 46 S.W.3d at 908–14, 915–16. Ambiguous or insufficient facts will often make an expert's opinion of the BAC at an earlier driving time supported by nothing more than arbitrary assumptions and therefore a scientific absurdity. See, Fitzgerald, *supra,* §§ 4:9, 4:14, 11:19, 22:1 to 22:3, 23:1 to 23:17. In any event, the jury is not bound by the expert's conclusion. *Christmas*, 2002–NMCA–020, ¶ 27, 131 N.M. 591, 40 P.3d 1035.

■ {20} In the present case, in addition to the sixty-six minute old .08 BAC reading,

the facts on which the State relied were solely the indicia of bloodshot, watery eyes, speech a little slurred, the officer's testimony of Defendant's inability to pass two field sobriety tests, Defendant's admission of drinking, and a videotape of the traffic stop and the officer administering the field sobriety tests. This evidence was insufficient to form an association with any particular BAC at the time of driving. While it remained well within the jury's province to find facts, under the current state of our DWI legislation, the jury should not have been permitted to draw inferences of a .08 BAC at the time of driving based solely on the facts presented by the State. That determination could only be rationally made based on scientific analysis tied to the type of factual evidence that must necessarily be evaluated in a particular case in order to draw rational inferences as to Defendant's rates of absorption and elimination. Lacking this essential process, the jury in the present case was left with no tools with which to draw rational inferences sufficient to find beyond a reasonable doubt a .08 BAC at the time of driving.

{21} Science tells us that BAC level reflects the amount of alcohol in the body at a given point after its consumption, but that the particular level is dependent at any given time on many critical factors that affect absorption and elimination. *See Martinez,* 2002–NMCA–043, ¶ 14, 132 N.M. 101, 45 P.3d 41 (noting that "it takes time for alcohol to be absorbed into the bloodstream, depending on any number of physiological and situational factors"); *Christmas,* 2002–NMCA–020, ¶ 26, 131 N.M. 591, 40 P.3d 1035 (setting out the expert testimony of Dr. Reyes, the expert who testified in the present case, that "absorption rates can vary tremendously, based on any number of anatomical, physiological, and situational factors"); *Mata,* 46 S.W.3d at 909 (analyzing retrograde extrapolation evidence in DWI cases, discussing considerations required in assessing the length of time necessary for alcohol to be absorbed, and stating that the length of time "depends on a variety of factors, including the presence and type of food in the stomach, the person's gender, the person's weight, the person's age, the person's mental state, the drinking pattern, the type of beverage consumed, the amount consumed, and the time period of alcohol consumption" (footnotes omitted)); Fitzgerald, *supra,* §§ 2:1 to 2:10, 2:12 to 2:13, 3:1 to 3:13, 4:1 to 4:14, 11:17 to 11:23, 22:1 to 22:19, 23:1, 23:4 to 23:5, 23:7 to 23:24 (setting out the critical variables that must be considered in determining an earlier BAC level and the fundamental errors and fallacies inherent in retrograde extrapolation). It is science to which we must turn, then, for BAC level extrapolation precisely because after alcohol is consumed, the level of BAC will vary depending on those critical factors, that may include the passage of time, the time and amount of food consumption, a person's weight and sex, the kind and quality (including the alcohol concentration) of the beverage, and the person's rates of absorption and elimination.

{22} In some instances, common experience bearing on behavior of an intoxicated person might be sufficient, with a later-taken BAC reading, to prove a .08 or more BAC at the time of driving. *See Baldwin,* 2001–NMCA–063, ¶ 16, 130 N.M. 705, 30 P.3d 394 (stating that jurors may draw on their life experiences and understanding of human behavior during a state of intoxication to draw reasonable inferences). However, in this case, such evidence does not exist. Furthermore, it would appear that even were the State in some case to rely only on a jury's common experience to be used in a relation-back analysis, science may still be critical for a jury to make a rational decision about the earlier BAC level. Case law warns that reading a sterile laboratory test number "tells us nothing about a driver's condition hours earlier." *Id.* ¶ 17. Without scientific evidence, the jury's task "becomes mere camouflage for guesswork," requiring conjecture and disregard of the standard of proof of beyond a reasonable doubt. *Id.* ¶¶ 17–18.

{23} Moreover, we do not rule out the possibility of a jury determination of a .08 BAC at the time of driving without the benefit of scientific analysis where a test result obtained immediately after a traffic stop could satisfy the State's proof burden. In addition, it may be possible that a later-taken, extremely high test result could be sufficient without scientific evidence to con-

clude that a .08 BAC or more existed at the time of driving. *See State v. Collins*, 2005–NMCA–044, ¶ 51, 137 N.M. 353, 110 P.3d 1090 (concluding that it was not error to permit the jury to consider whether the defendant was guilty of DWI .08 at the time of driving where it presumably determined that reasonable doubt existed as to whether the later .17 and .18 BAC readings were sufficiently accurate to convict for aggravated DWI, although time was not a factor). But these examples do not reflect the facts here and are not at issue here.

{24} We are faced with a .08 BAC reading taken one hour and six minutes after driving. The only scientific analysis was that which was presented by Defendant after the State rested. In its opening argument to the jury, the State did not ask the jury to use scientific evidence to convict Defendant. The State's case rested on the indicia of bloodshot and watery eyes, slightly slurred speech, behavior during field sobriety tests, and the BAC reading, with no scientific evidence or opinion on which to rationally infer a .08 BAC at the time of driving.

{25} We conclude in the case before us that the .08 measurement an hour and six minutes after driving could have been rationally related back to a .08 level at the time of driving only through scientific analysis involving the various critical factors that affected absorption, peaking, and elimination. Without such evidence, it was not possible for the State to prove Defendant's BAC at the time of driving. Reasonable doubt was built into an attempted extrapolation. The endeavor required science. Critical factors for alcohol absorption and elimination analysis had to be evaluated. Facts must have tied those critical factors to real circumstances. The relation-back endeavor is not something the jurors could rationally do without evidence of the scientific process related to the facts of the case that were necessary for an absorption-elimination analysis. The State had the burden to prove nexus beyond a reasonable doubt, and that proof, in this case, required expert scientific testimony sufficient for the required rational inference. The State did not present such evidence and as such the State did not present sufficient evidence for the jury to convict Defendant of DWI based on a BAC of .08 or higher.

{26} We acknowledge that in *State v. Cavanaugh*, 116 N.M. 826, 867 P.2d 1208 (Ct.App.1993), this Court, without scientific evidence, relied on a .13 BAC reading "combined with the evidence of Defendant's behavior before, at, and after the time of driving" to affirm the defendant's conviction of .10 BAC or more at the time of driving. *Id.* at 830, 867 P.2d at 1212. We also acknowledge that *Baldwin* appears to permit a jury to turn to corroborative evidence of "aberrant behavior," presumably under a view that, as a matter of some sort of common experience, certain behavior can be an indication that a person had at least a .08 BAC level at the time of driving. *See Baldwin*, 2001–NMCA–063, ¶¶ 15–16, 22, 130 N.M. 705, 30 P.3d 394 (noting concern about jury speculation, yet also noting that jurors are entitled to draw upon their experience to make reasonable inferences). In discussing *Cavanaugh, Baldwin* characterized the defendant's behavior there as "egregious, incriminating behavior." *Baldwin*, 2001–NMCA–063, ¶ 10, 130 N.M. 705, 30 P.3d 394. In *Christmas*, we were satisfied simply using "corroborating behavioral evidence." 2002–NMCA–020, ¶ 24, 131 N.M. 591, 40 P.3d 1035. But, in *Martinez* we noted that *Baldwin* determined the BAC level to lack "necessary corroboration, such as ... observations of significant incriminating behavior." *Martinez*, 2002–NMCA–043, ¶ 10, 132 N.M. 101, 45 P.3d 41. Rarely, if at all, can or should behavior replace scientific analysis as a basis to extrapolate backwards from a .08 BAC to a .08 BAC when an hour separates the two. Behavior is overwhelmingly better evidence as proof of an impairment charge under Section 66–8–102(A), not a BAC charge. While we do not today rule out behavior evidence to prove a BAC at the time of driving, the use of behavior testimony to convict is generally applicable to the proof of impairment under Section 66–8–102(A) and not to the proof of a particular BAC level. To the extent our prior cases say or indicate views in regard to the relevance of behavior evidence inconsistent with those expressed in the present opinion, those cases are not to be followed.

{27} As well, our prior cases leave an unclear picture with regard to the requirement of scientific evidence. As we indicated earlier in this opinion, neither *Cavanaugh* nor *Baldwin* involved scientific evidence. In *Martinez,* no expert testified, and the defendant apparently did not object to police officer testimony about the alcohol peaking and elimination processes. 2002–NMCA–043, ¶ 16, 132 N.M. 101, 45 P.3d 41. Based on that testimony, the three hours between drinking and driving, the extra hour and a half after driving before the BAC test, and on the defendant's behavior, the Court in *Martinez* determined that the science and the facts about the passage of time were sufficient to allow a jury inference. *Id.* ¶¶ 14–17. In *Christmas,* it appears that this Court relied on the expert's scientific testimony describing the alcohol absorption and elimination processes in upholding the jury's verdict, although there is no indication of the extent, if any, to which the expert provided a scientific analysis using elemental facts bearing on metabolism necessary to prove the particular defendant's absorption rate or time and likely point of peaking. 2002–NMCA–020, ¶¶ 26–28, 131 N.M. 591, 40 P.3d 1035. These cases do not indicate how the extrapolation analysis was accomplished except upon assumption or speculation. We do not consider the cases as restricting our view that the relation back analysis in this case must at a minimum be based on scientific evidence of the absorption and elimination processes, and scientific analysis involving the critical physiological and other factors in retrograde extrapolation analysis.

{28} We conclude and hold that the State failed to present sufficient evidence for a jury to draw rational inferences and conclude beyond a reasonable doubt that Defendant's blood alcohol level at the time of driving was as much as or greater than the .08 level obtained over an hour later. The jury could only speculate to reach any conclusion that Defendant's actual BAC level at the time of driving was .08 or more.

{29} In cases such as this, juries are not prepared to find and should not be given the task of finding guilt beyond a reasonable doubt without the assistance of scientific evidence and likely also expert scientific opinion. *See Baldwin,* 2001–NMCA–063, ¶ 15, 130 N.M. 705, 30 P.3d 394 ("Without evidentiary guidance, no jury of lay persons can know, beyond a reasonable doubt, whether a 0.08 BAC test result would equate to a BAC reading at the time of driving of 0.08, 0.12, 0.04, or anything in between."). It is plainly difficult enough for the State to prove a nexus even using scientific evidence. *See* Fitzgerald, *supra,* § 23:17 at 23–36 ("In sum, the whole concept of attempting to estimate to two or three decimal places the precise prior BAC of a person (at driving time) from one later test result (an hour or more later) involves a cornucopia of possible errors and insupportable assumptions, and becomes an exercise rife with speculation and guesswork."). That difficulty has caused some jurisdictions to permit the State to present a prima facie case without scientific evidence and to place the burden on the accused to rebut that case with scientific evidence. *See, e.g., Commonwealth v. Wirth,* 936 S.W.2d 78, 84 (Ky.1996) (holding that extrapolation evidence was not necessary for the State to establish a prima facie case of DWI based on test results of .156 BAC one hour and twelve minutes after driving to prove .10 or more BAC at the time of driving, placing the burden of going forward on the accused "where exempting facts are peculiarly within his knowledge"). If the burden of proof is to be changed from the State to the defendant, it must be our Supreme Court, not this Court, that makes the change. The acknowledged difficulty of proof in using the scientific retrograde extrapolation process to prove a BAC at the time of driving is an important reason why our Legislature should address the need for effective legislation. This Court has previously suggested the need for legislation on two occasions. *See Christmas,* 2002–NMCA–020, ¶ 22, 131 N.M. 591, 40 P.3d 1035; *Baldwin,* 2001–NMCA–063, ¶ 19, 130 N.M. 705, 30 P.3d 394; *see also* Fitzgerald, *supra,* § 4:14 at 4–28 to 4–29 ("We are not alone in the conviction that the pretense that one can scientifically perform retrograde calculations to determine the precise BAC of a subject at an earlier time ought to be abandoned."). Difficulty of proof and jury speculation in this very important area of motor

vehicle law needs to be removed with reliable testing combined with an effective BAC law.

{30} To the extent this opinion changes prior law or rule regarding the relevancy of behavior evidence to prove a BAC level, our determinations today can be applied retroactively only to those cases that are pending on the date this opinion is filed. *See State v. Nunez,* 2000–NMSC–013, ¶¶ 114–16, 129 N.M. 63, 2 P.3d 264.

## CONCLUSION

{31} We reverse Defendant's DWI conviction.

{32} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JAMES J. WECHSLER, Judges.