Certiorari Denied, No. 31,748, June 26, 2009

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-077**

**Filing Date:    May 11, 2009**

**Docket No. 27,938**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**LAMONT PICKETT, JR.,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Mark A. Macaron, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}**     NMSA 1978, Section 66-8-102(A) (2005) (amended 2008) provides that "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state."

A person is under the influence of intoxicating liquor if "as a result of drinking liquor [the driver] was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to [the driver] and the public."

*State v. Sanchez*, 2001-NMCA-109, ¶ 6, 131 N.M. 355, 36 P.3d 446 (alterations in original) (quoting UJI 14-4501 NMRA). "The foregoing standard has the shorthand nomenclature of 'impaired to the slightest degree.'" *State v. Neal*, 2008-NMCA-008, ¶ 21, 143 N.M. 341, 176 P.3d 330, *cert. denied*, 2008-NMCERT-001, 143 N.M. 397, 176 P.3d 1129.

**{2}** Defendant Lamont Pickett, Jr. appeals the judgment of the district court affirming his conviction in the metropolitan court of driving under the influence of intoxicating liquor (DWI) in violation of Section 66-8-102(A). He contends that the metropolitan court improperly admitted evidence of his blood alcohol content (BAC) results in violation of Rule 11-401 NMRA and Rule 11-403 NMRA because they were not relevant and because they were more prejudicial than probative as there was no evidence relating the BAC results back to the time of driving. He further contends that there was insufficient evidence to prove impairment beyond a reasonable doubt. We hold that the BAC results were relevant to demonstrate that Defendant had alcohol in his system and that their consideration by the metropolitan court judge was not improper. We further hold that substantial evidence supports Defendant's conviction. We affirm.

**BACKGROUND**

**{3}** At Defendant's bench trial in metropolitan court, the evidence showed that Defendant was stopped after Albuquerque Police Officer Richard Locke observed him weaving out of his lane, coming within a foot of colliding with another vehicle. Defendant pulled over in a lawful manner and provided his driver's license, registration, and proof of insurance without difficulty. Officer Locke noticed an odor of alcohol and that Defendant had bloodshot, watery eyes. Defendant admitted that he had consumed alcohol. Officer Locke called Officer Bret White to continue the investigation because Officer Locke was going off duty. Defendant told Officer White that he had "two beers, maybe one," and he agreed to take field sobriety tests.

**{4}** Officer White testified that the first test he administered was the horizontal gaze nystagmus (HGN) test, during which Defendant continued to emit an odor of alcohol. Officer White did not testify as to the results of the HGN test or give an opinion as to whether Defendant had passed the test. During the one-leg-stand test, Defendant held his foot up for the required thirty seconds and did not hop, but he swayed and lifted his arms from his sides. These two factors were considered "clues" to Officer White in his evaluation of Defendant's driving performance, with two "clues" being a significant number. During the instruction phase of the walk-and-turn test, Officer White had to explain the turn four times before Defendant said he understood. Defendant missed touching heel and toe on three of the first nine steps. After the first nine steps, Defendant again asked for an

explanation of the turn. Upon being told to do it as it had been previously described by Officer White, however, Defendant performed the turn correctly. Defendant held his arms away from his body during the entire test. Officer White recorded five of eight possible "clues" during the walk-and-turn test.

**{5}** Officer White placed Defendant under arrest and transported him to a police substation. After the required twenty-minute observation period, Officer White administered two breath tests on an Intoxilyzer 5000 machine. The first test indicated a BAC of .07. The second test, three minutes later, indicated a BAC of .08.

**{6}** Defendant was charged under Section 66-8-102. The complaint did not distinguish between Section 66-8-102(A), the "impaired to the slightest degree" part of the statute, and Section 66-8-102(C), the "per se" part of the statute. The latter subsection makes it unlawful to drive with a BAC of .08 or more, whether or not impaired driving has been shown. The metropolitan court judge convicted Defendant under Section 66-8-102(A), stating, "I believe that given the State's evidence, . . . Defendant was impaired to the slightest degree, given the driving, the field sobriety test, and the breath score combined together." The district court affirmed Defendant's conviction on appeal.

**ADMISSION OF BAC RESULTS**

**{7}** Defendant challenges the admission of the BAC results under Rule 11-401 and Rule 11-403. We review a trial court's evidentiary ruling under an abuse of discretion standard. *State v. Martinez*, 2007-NMSC-025, ¶ 7, 141 N.M. 713, 160 P.3d 894.

**{8}** At trial in the metropolitan court, Defendant moved to exclude the breath card from the Intoxilyzer 5000 machine that showed Defendant's BAC results of .07 and .08, arguing that no evidence had been presented extrapolating the BAC results back to the time of driving, as required by this Court's then-recent decision in *State v. Day*, 2006-NMCA-124, 140 N.M. 544, 144 P.3d 103, *rev'd*, 2008-NMSC-007, 143 N.M. 359, 176 P.3d 1091. Defendant's BAC was tested approximately forty-seven minutes after the stop. Defendant argued that in the absence of extrapolation evidence, the breath card was not relevant and was more prejudicial than probative.

**{9}** In *Day*, the defendant was convicted of per se DWI under Section 66-8-102(C). Approximately one hour and six minutes after the defendant's arrest, his BAC was .08, thus raising the question of whether it had been .08 at the time of driving. *Day*, 2006-NMCA-124, ¶ 2. We held, and our Supreme Court agreed (although reversing the result, 2008-NMSC-007, ¶ 26), that in a per se DWI case, the state must prove the BAC at the time of driving through scientific retrograde extrapolation evidence. *Day*, 2006-NMCA-124, ¶¶ 26-28. We note that subsequent statutory amendment provides that it is unlawful to drive with a BAC of .08 or higher as measured "within three hours of driving the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle." Section 66-8-102(C)(1).

3

**{10}** Rule 11-402 NMRA declares relevant evidence to be admissible. Rule 11-401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Rule 11-403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Defendant argues in this appeal that his BAC results were not a relevant consideration to his impairment under Section 66-8-102(A). He further argues that the admission of the evidence was highly prejudicial because the metropolitan court judge relied on the results in her guilty verdict. We do not agree.

**{11}** We first note the limited applicability of *Day* to this case. *Day* was a per se case under Section 66-8-102(C). The BAC results were essential to the case. *See Day*, 2006-NMCA-124, ¶¶ 28-29. Although the time of driving is also relevant under the language of Section 66-8-102(A), only impairment, not any particular BAC, need be shown. In this case, the metropolitan court found that the State did not prove a per se case apparently because of the absence of relation back evidence.

**{12}** However, to prove a Section 66-8-102(A) violation, the State needed to prove that Defendant "was less able to the slightest degree" to drive "as a result of drinking liquor." *Sanchez*, 2001-NMCA-109, ¶ 6 (internal quotation marks and citation omitted). The BAC results are evidence that Defendant had alcohol in his system and, regardless of the numerical BAC, tended to show that Defendant's poor driving, as stated in the testimony, was "a result of drinking liquor." *Cf. State v. Montoya*, 2005-NMCA-078, ¶ 21, 137 N.M. 713, 114 P.3d 393 (stating that evidence of alcohol in the defendant's system four hours after an accident was relevant evidence in a vehicular homicide case). The BAC results were relevant evidence.

**{13}** Defendant argues that the BAC results were so prejudicial as to require the metropolitan court to exclude them under the balancing test of Rule 11-403 and that the judge improperly used the BAC results in her conclusion that Defendant was impaired to the slightest degree. We disagree. The balancing test of Rule 11-403 is designed to enable a trial judge to act as a gatekeeper to insulate the jury from prejudice and confusion. There was no jury in this case. Moreover, when admissibility of evidence is challenged at a bench trial, we generally "presume that a judge is able to properly weigh the evidence, and thus the erroneous admission of evidence in a bench trial is harmless unless it appears that the judge must have relied upon the improper evidence in rendering a decision." *State v. Hernandez*, 1999-NMCA-105, ¶ 22, 127 N.M. 769, 987 P.2d 1156.

**{14}** The metropolitan court judge considered all of the evidence combined together, including the BAC results. As a consequence, it could be argued that the metropolitan court judge was prejudiced by that evidence. Yet, she was entitled to consider the BAC results insofar as they were relevant as evidence of alcohol in Defendant's system that would indicate that Defendant's poor driving was due to his consumption of liquor. The dissent stresses that the metropolitan court judge did not state that she relied on the BAC results to

conclude that Defendant had consumed alcohol and further asserts that the presence of alcohol in Defendant's system was not an issue in this case, in part because Defendant had admitted to drinking. However, the metropolitan court judge did not specify that she relied on Defendant's statements about consuming alcohol. She based her finding of guilt on three express aspects of the State's evidence: Defendant's driving, the field sobriety tests, and the BAC results. Of these, only the BAC results directly indicate Defendant's consumption of alcohol.

{15}    While the metropolitan court judge was not permitted to relate the BAC results back to the time of driving to find a particular level of blood alcohol at that time, she did not do so. Indeed, the metropolitan court judge specifically found that there was no per se violation. Therefore, even though the metropolitan court judge considered the BAC results along with the other evidence, there is no indication that she "must have" considered the BAC results in an inappropriate way. *See id.* The metropolitan court judge did not abuse her discretion in admitting the BAC results because she did not inappropriately use the results in her ruling. *Cf. Montoya*, 2005-NMCA-078, ¶¶ 18, 21-22 (expressing concern in a vehicular homicide case that a jury would improperly use a BAC score that had been taken four hours after the accident and, therefore, only allowing evidence that the defendant had some amount of alcohol in his blood).

**SUFFICIENCY OF THE EVIDENCE**

{16}    Defendant also makes several arguments concerning the sufficiency of the evidence. "[T]he test to determine the sufficiency of evidence in New Mexico . . . is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Wildgrube*, 2003-NMCA-108, ¶ 3, 134 N.M. 262, 75 P.3d 862 (internal quotation marks and citation omitted).

{17}    To convict Defendant, the State needed to prove that as a result of Defendant drinking alcohol, he "was less able to the slightest degree" to safely handle a vehicle. *Sanchez*, 2001-NMCA-109, ¶ 6 (internal quotation marks and citation omitted). Officer Locke testified that Defendant was driving. His testimony that he saw Defendant weave out of his lane and come within a foot of colliding with another vehicle provided evidence that Defendant "was less able to the slightest degree . . . to exercise the clear judgment and steady hand necessary to handle a vehicle with safety." *Id.* (internal quotation marks and citation omitted). The breath tests, without any attributed numerical result, showed that Defendant had alcohol in his system. *See Montoya*, 2005-NMCA-078, ¶ 18. Although not included in the metropolitan court judge's ruling, additional evidence that Defendant's poor driving was a result of drinking liquor included testimony that he had admitted drinking beer and Officer Locke had noticed an odor of alcohol when he stopped Defendant.

5

**{18}** Defendant argues that inconsistencies between the testimonies of Officer Locke, Officer White, and Defendant's passenger undermine Officer Locke's testimony. However, in making this argument, Defendant is asking us to re-weigh the evidence and resolve the inconsistencies in his favor. On appellate review, we may not weigh the evidence or substitute our judgement for that of the factfinder. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. We view the evidence in the light most favorable to the prevailing party, resolving all conflicts in favor of the verdict. *Id.*

**{19}** Defendant also argues that Officer White's testimony about the field sobriety tests was "lay testimony cloaked in scientific terminology" and thus not evidence supporting Defendant's conviction. This argument is based on Officer White's purportedly having impermissibly testified, without being qualified as an expert, beyond that which is allowed by Rule 11-701 NMRA. We note that Defendant does not argue that the metropolitan court should not have allowed the testimony, presumably because he did not object to the testimony when it was offered. Because the State does not argue lack of preservation, we turn to Defendant's argument.

**{20}** Rule 11-701 provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
>
> > A.  rationally based on the perception of the witness,
> >
> > B.  helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and
> >
> > C.  not based on scientific, technical or other specialized knowledge within the scope of Rule 11-702 NMRA.

Defendant asserts that Officer White's references to "clues" as indicated by his observation of the tests goes beyond what a "normal person" would use to form an opinion on whether a driver was impaired by alcohol. *See State v. Luna*, 92 N.M. 680, 684-85, 594 P.2d 340, 344-45 (Ct. App. 1979) (stating that "[t]he requirement of a rational basis is satisfied if the opinion or inference is one which a normal person would form on the basis of the observed facts").

**{21}** Officer White's testimony, however, included both information a normal person would not likely be qualified to use in forming an opinion as well as information a normal person would so use. In addition to testimony about the number of "clues" Defendant exhibited in performing the one-leg-stand test and the walk-and-turn test, Officer White also testified as to specific observations he made that might lead a normal person to believe a driver was intoxicated. The latter included Defendant's swaying and failing to keep his arms

6

at his side as instructed during the one-leg-stand test and, during the walk-and-turn test, moving his foot to the side for balance, failing to touch heel to toe on several steps, holding his arms away from his side, and requesting that the instructions for the turn be repeated several times. Again, we presume that the judge in a bench trial is able to properly weigh the evidence and that erroneous admission of evidence is harmless "unless it appears that the judge must have relied upon the improper evidence in rendering a decision." *Hernandez*, 1999-NMCA-105, ¶ 22. Given the balance problems Defendant exhibited during the tests and his difficulty in following instructions, Officer White's testimony about the number of "clues" Defendant exhibited during the tests, even if erroneously admitted, was not essential to the judge's ruling.

**{22}** Finally, Defendant's performance on the tests was only one of the three bases recited by the metropolitan court judge for her ruling that Defendant was impaired, and she specified that she based her ruling on the three factors "combined together."

Thus, even if we were to agree that the three types of evidence, if considered individually, might not support a finding of guilt beyond a reasonable doubt, we conclude that the totality of the evidence was sufficient to convict Defendant.

**CONCLUSION**

**{23}** We affirm Defendant's conviction.

**{24}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**I CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

**MICHAEL E. VIGIL, Judge (dissenting)**

**Vigil, Judge (dissenting).**

**{25}** The majority does not take into account that the crime of DWI can be committed in different ways under Section 66-8-102, and that each has different, discrete elements. When these differences are taken into account, it is apparent that reversible error was committed by the metropolitan court judge. Since the majority disagrees, I dissent.

**{26}** Section 66-8-102(C)(1) describes one way to commit the crime. In 2006, when the complaint against Defendant was filed, this subsection in pertinent part provided: "It is

7

unlawful for a person who has an alcohol concentration of eight one hundredths or more in his blood or breath to drive a vehicle within this state." *Day*, 2008-NMSC-007, ¶ 16 (internal quotation marks and citation omitted). I refer to this crime as "old per se DWI." In a prosecution alleging old per se DWI for breath, the elements are: (1) "the defendant operated a motor vehicle," and (2) "*at that time*, the defendant had an alcohol concentration of eight one-hundredths (.08) grams or more in two hundred ten liters of breath." *State v. Baldwin*, 2001-NMCA-063, ¶ 7, 130 N.M. 705, 30 P.3d 394 (quoting the 2001 version of UJI 14-4503 NMRA) (emphasis added; brackets and inapplicable language in brackets omitted). Thus, old per se DWI is a strict liability crime. *See State v. Harrison*, 115 N.M. 73, 78, 846 P.2d 1082, 1087 (Ct. App. 1992) (concluding that by enacting per se DWI, the Legislature intended to create a strict liability offense). It is defined in terms of a specific BAC of .08, and whether the driver is actually impaired is not an element of the offense. The Legislature has determined that it is unacceptable for any person to drive with a BAC of .08, *regardless* of how that level of alcohol affects any particular driver. This is why the crime has been traditionally referred to as "per se" DWI. The variations of responses which different people may exhibit to consuming identical dosages of alcohol under similar conditions is not a consideration in whether a crime was committed. However, an essential component of old per se DWI is having a BAC of .08 *at the time of driving*, rather than when the test is later administered. *Day*, 2008-NMSC-007, ¶ 16. Thus, we held in *Day* (and our Supreme Court subsequently agreed, *Day*, 2008-NMSC-007, ¶ 26) that the BAC at the time of driving must be proven by the State through scientific retrograde extrapolation evidence. *Day*, 2006-NMCA-124, ¶¶ 26-28.

**{27}** Apparently in response to the difficulty of having to prove BAC at the time of driving, the Legislature amended Subsection (C)(1) in 2007, effective for cases committed after April 1, 2007. Although not applicable to Defendant's case, I discuss this statute because the majority analysis suggests it relates to the issues raised by Defendant. The statute now provides in pertinent part that it is unlawful for a person to drive a vehicle within this state if the person has a BAC of .08 or more "within three hours of driving the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle." 2007 N.M. Laws, ch. 322, § 1, codified at Section 66-8-102(C)(1) (2007). I refer to this crime as "new per se DWI." The elements for new per se DWI for breath are: (1) "[t]he defendant operated a motor vehicle," and (2) "[w]*ithin three (3) hours of driving*, the defendant had an alcohol concentration of eight one-hundredths (.08) grams or more in two hundred ten liters of breath, and the alcohol concentration resulted from alcohol consumed before or while driving the vehicle." UJI 14-4503. The crime is still a strict liability offense, and whether the driver is actually impaired is not an element of the offense. In the words of the committee commentary to UJI 14-4503, "It is not necessary for the state to prove that the defendant was driving 'while under the influence' in order for the jury to render a guilty verdict under [Section] 66-8-102(C) [2007]." The primary difference between old per se DWI and new per se DWI is *when* the State must prove that the driver had the prohibited BAC of .08. Under new per se DWI, it is not necessary for the State to prove the prohibited BAC *at the time of driving*; it is sufficient to prove the prohibited BAC *within three hours of driving*. This change eliminates the requirement in most cases for the State to introduce

scientific retrograde extrapolation evidence to satisfy its burden of proof. *See Day*, 2008-NMSC-007, ¶¶ 28-31 (discussing two situations under new per se DWI where scientific retrograde extrapolation evidence is still necessary).

**{28}** Section 66-8-102(A) describes a third way of committing DWI. Besides old per se DWI, this statute also applied at the time of Defendant's trial. Under this statute, "It is unlawful for a person who is *under the influence* of intoxicating liquor to drive a vehicle within this state." (Emphasis added.) This form of DWI, which I refer to as "impaired DWI" requires that the State prove that the driver's ability to drive was impaired by the consumption of alcohol. The essential elements of impaired DWI are: (1) "[t]he defendant operated a motor vehicle"; and (2) "[a]t the time, the defendant was under the influence of intoxicating liquor, that is, as a result of drinking liquor the defendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public." UJI 14-4501. In this species of DWI, an individual's personal reaction to alcohol consumption determines whether a crime was committed, irrespective of the BAC. *See State v. Gutierrez*, 1996-NMCA-001, ¶ 4, 121 N.M. 191, 909 P.2d 751 (noting that the defendant was not convicted of having a particular BAC level, but of the more general offense of driving while intoxicated). The variations of responses which different people exhibit to consuming identical dosages of alcohol under similar conditions determines whether one person commits DWI and another does not.

**{29}** In this case, the complaint does not refer to a particular subsection of the statute. It simply alleges that Defendant violated Section 66-8-102. The BAC test was administered to Defendant forty-seven minutes after he was stopped, and the results were .07 and .08. Majority Opinion ¶ 8. As discussed, if the State intended to prove a violation of old per se DWI, our *Day* opinion required the State to introduce evidence at trial of Defendant's BAC at the time of driving through scientific retrograde extrapolation evidence. However, as Defendant alleged prior to trial, the State had no such evidence. As such, the BAC test result was irrelevant to a charge of old per se DWI. However, the metropolitan court judge did not find Defendant guilty of old per se DWI.

**{30}** The metropolitan court judge found Defendant guilty of impaired DWI. "[G]iven the driving, the field sobriety test, and the breath score combined together," the metropolitan court judge concluded the State proved that Defendant was "impaired to the slightest degree." Thus, the metropolitan court judge specifically stated that she considered the BAC test results and relied upon them in finding Defendant guilty. The metropolitan court judge did so without any evidence showing that the BAC affected Defendant's physiology and ability to drive. That is to say, there was no evidence that the .07 and .08 test results specifically affected Defendant's driving behavior. A .03 BAC result would not have entitled Defendant to a directed verdict *regardless* of his driving, and the .07 and .08 test results do not prove Defendant's under the influence DWI without scientific evidence of how those levels of alcohol affected *him* specifically. Without proof, the metropolitan court judge improperly assumed that the BAC results established that Defendant's driving was impaired

because of alcohol consumption. Judges are not scientists. Without this essential link, the BAC test results were not relevant.

**{31}** The majority concludes that the metropolitan court judge could properly consider the BAC evidence insofar as it was relevant as evidence of alcohol in Defendant's system. Majority Opinion ¶ 14. There are two answers to this supposition. First, the metropolitan court judge clearly stated she relied on the BAC test *results* to conclude that Defendant was guilty of impaired DWI, and not for the limited purpose of concluding that Defendant consumed alcohol. Second, as the majority acknowledges, Officer Locke testified that when he stopped Defendant, he admitted to Officer Locke that he had consumed alcohol. Majority Opinion ¶ 3. At trial, Defendant did not deny drinking alcohol, and his passenger, who testified on Defendant's behalf, said that they both had consumed alcohol. Therefore, whether Defendant had alcohol in his system was not at issue in the case. *Compare Montoya*, 2005-NMCA-078, ¶¶ 5, 18, 21 (concluding that the trial court properly excluded the BAC test result itself from the jury's consideration when the test result could not be related to the time of driving, and properly allowed the jury to consider the BAC only to show that alcohol was in the defendant's system when the defendant was evasive about the subject of drinking to police and passers-by who had stopped to give assistance, and the defendant would not at first submit to a blood draw authorized by a search warrant by adopting a fighting stance and telling the officers they would have to "take [him] down") (alteration in original).

**{32}** I respectfully disagree with the majority conclusion that the State established that the BAC test results were relevant to the issues tried in this case. Rule 11-401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). They were not relevant to old per se DWI because they were not related to the time of driving, and they were not relevant to impaired DWI because the results were not related by evidence to whether Defendant was in fact impaired. Moreover, they did not tend to prove a contested issue in the case. All they did was corroborate Defendant's admission, and evidence he himself presented, that he did in fact consume alcohol. Not being relevant, the BAC test results were not admissible into evidence. Rule 11-402 ("Evidence which is not relevant is not admissible.").

**{33}** Finally, I disagree with the majority that "there is no indication that [the metropolitan court judge] 'must have' considered the breath score in an inappropriate way." Majority Opinion ¶ 15. The metropolitan court judge clearly and unambiguously stated that she relied on the "breath score" to find Defendant guilty of impaired DWI. The score *itself* was considered by the metropolitan court judge in finding Defendant guilty of impaired DWI. Therefore, this is not a case in which we can presume that the metropolitan court judge disregarded the improper evidence. *See State v. Gutierrez*, 1996-NMCA-001, ¶ 4 (stating that in a bench trial for DWI, it can be presumed that the trial court disregarded improper evidence, but when it appears that the trial court must have relied on the improper evidence in reaching its decision, its admission constitutes reversible error). Finally, even if the BAC

evidence was somehow relevant, it was so prejudicial that it should have been excluded under Rule 11-403. The BAC evidence clearly affected the metropolitan court judge's decision. She assumed, without evidence, that these BAC results proved Defendant's driving was impaired by alcohol. Impaired DWI requires more than such an assumption.

**{34}** The issues raised by this case could have been avoided if a pretrial determination had been made that the case would be tried either as a per se DWI or as an impaired DWI. This would have greatly streamlined the issues and simplified the trial. Until prosecutors voluntarily elect to proceed under one theory or another, or judges order an election pursuant to a motion, evidentiary issues such as those presented in this case will continue to arise.

**{35}** The BAC evidence was not admissible in this DWI trial. Furthermore, even if the evidence was somehow relevant, it should have been excluded as unduly prejudicial. Since the majority has decided otherwise, I dissent.

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for _State v. Pickett_, No. 27,938**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-PJ | Prejudice |
| CA-SE | Substantial or Sufficient Evidence |
| | |
| **EV** | **EVIDENCE** |
| EV-BT | Blood/Breath Tests |
| EV-PB | Probative Value vs. Prejudicial Effect |
| EV-RC | Relevancy, Materiality, and Competency |
| EV-SC | Scientific Evidence & Daubert Standard |
| EV-SS | Substantial or Sufficient Evidence |