181 P.2d 800

STATE v. SMITH.

No. 4947.

Supreme Court of New Mexico.

June 10, 1947.

D. D. Archer and Paul R. Dillard, both of Artesia, and David Tant, of Oklahoma City, Okl., for appellant.

C. C. McCulloh, Atty. Gen., and Robert W. Ward, Asst. Atty. Gen., for appellee.

SADLER, Justice.

The defendant, L. O. Smith, was convicted of murder in the first degree and his punishment fixed at life imprisonment in the penitentiary in lieu of death by direction of the jury trying him. He prosecutes this appeal from the judgment of conviction so pronounced upon him.

The killing occurred at Artesia in Eddy County, New Mexico, on August 3, 1945. The deceased, Dr. Craig Cornett, was an osteopathic physician and surgeon residing and practicing his profession at Artesia at the time of his death and for some years prior thereto. The two families, that is to say, the deceased and his wife and the defendant and his wife, had been on friendly terms prior to and at the time of the fatal shooting which resulted in the death of the deceased. The defendant, a worker in the oil fields, with his wife, paid frequent visits to the home of the Cornetts, sometimes spending the night as did the Cornetts with them on occasions. They went on fishing and hunting trips together not infrequently. However, incidents had occurred, so the defendant testified, both at the home of the deceased, and on one of the fishing trips, which caused him to suspect undue intimacy between his wife and the deceased.

The doubts entertained by defendant concerning his wife's fidelity were not shared by deceased's wife to whom he divulged his suspicions following the claimed incident on the fishing trip above mentioned. Apparently her own faith in her husband and defendant's wife caused her to attribute defendant's suspicion to insane jealousy without support in fact. Nevertheless, whatever the basis for this feeling on defendant's part, whether with or without reason, it no doubt was responsible for the domestic unhappiness and difficulty which developed in his family resulting in a separation and the institution

on April 14, 1945, of a divorce suit by him against his wife in Eddy County, New Mexico. The separation continued for about two months when a reconciliation took place. The reunion lasted for a short time, then another separation occurred. It was followed in due course by the filing of the second divorce suit, this time by the wife of defendant, on June 29, 1945. It was still pending undetermined and untried when defendant shot and killed deceased as hereinafter related. Soon after the second and final separation, the defendant's wife went to the Cornett home to reside where, apparently in exchange for her room and board, she did the cooking and housework for the Cornett family.

On the night of August 3, 1945, at about 9:00 o'clock, the deceased with his wife, her nephew, a young boy fifteen years of age, an infant granddaughter, one and a half years old, and the defendant's wife, entered the Longacre Cafe in Artesia and seated themselves at the first table to the right near the plate glass window at the front facing west. The windows were equipped with Venetian blinds which at the time, although lowered, were adjusted so that the slats in same rested horizontally and anyone on the outside, with little effort, could see inside.

The Cornett party had been seated in the cafe for about fifteen minutes and had been partially served with their orders when the defendant drove up in his automobile and parked at the curbing. He got out of his car and walked to the front of the cafe and looked through the window opposite which the Cornett party was seated. He then returned to his automobile, took from it a 300 Savage rifle, returned to the cafe, entered same carrying the gun under his left arm and when inside drew his rifle on Mrs. Cornett, wife of the deceased. Mrs. Smith sprang up immediately, grabbed the rifle by the lower end of its barrel and endeavored to keep same pointed toward the floor. A bystander, one Clem B. Kukenmier, who happened to be in the cafe at the time, came to the aid of defendant's wife and joined in the scuffle over the gun. Just about the time he did so, the rifle was discharged into the body of the deceased; killing him instantly. Throughout the struggle for possession of the gun, the effort of Mrs. Smith was to keep its barrel pointed toward the floor until defendant could be relieved of it. It was obvious that his effort was to keep possession of the gun and get it pointed in the direction of the deceased or some member of the party sitting at his table.

The shot which killed the deceased also passed through the left arm of the nephew of his wife sitting at the same table before entering the body of deceased, inflicting a flesh wound. Following the discharge of the rifle, the scuffle over its

possession carried those participating out the front door of the cafe on to the sidewalk and, finally, across the sidewalk and in between some cars parked at the curb. During the progress of the scuffle, Kukenmier had called for aid, bringing in response one J. C. Mitchell who was in the cafe at the beginning of the affray. He seized defendant around the neck with his arm and choked him into submission. Indeed, he applied so much pressure that when he released it, the defendant dropped limply to the ground unconscious and so remained for more than ten minutes. The defendant was relieved of his rifle by Kukenmier who had assisted Mrs. Smith in the scuffle with defendant over its possession. It was found to have in its chamber one discharged shell and four loaded ones. Officers were quickly summoned, who took defendant into custody and removed him to jail.

Mrs. Cornett, deceased's wife, followed the struggling group out of the cafe and attempted to strike and kick the defendant. When she first laid hands upon him he said to her: "I am going to kill you yet." This threat was in line with others previously made by defendant against the Cornett family or some member of it. At the time defendant related to deceased's wife the incident which he said occurred on the fishing trip and caused him to doubt his wife's fidelity, he made the threat to Mrs. Cornett that he would kill her and her husband, Dr. Cornett, and his own wife. Several different persons had heard him make threats against the life of deceased, one as recently as two weeks prior to the time he actually killed him.

While defendant was still in front of the cafe and before he had been taken to the jail he was heard to say: "I got the one I wanted." When one of the officers arrived to take him into custody and while still at the scene of the shooting, defendant said: "It is me, fellows; it is me, fellows; I did it." When they arrived with him at the city jail he said to still another officer: "Well, I told the son-of-a-bitch I would get him."

All of the foregoing facts are within the verdict returned by the jury finding the defendant guilty of murder in the first degree and assessing his punishment at life imprisonment in the penitentiary. He took the stand in his own defense and denied knowing the Cornetts and his wife were in the Longacre Cafe when he went there shortly after 9:00 o'clock p. m. to eat. He gave as an explanation for looking in the window before entering that it was to learn whether or not the cafe was too crowded for him to get a seat. He admitted seeing his wife seated at the table but denied that he saw any of the Cornetts. He testified to a wish to effect a reconciliation with his wife, so returned and got his gun and entered the cafe, certain in his own mind that the Cornetts were there

even though unobserved by him and fearing there was a pistol or two in the party. He denied pointing the gun at anyone upon entering the cafe and then gave his version of the scuffle that followed his entry. The jury evidently placed little credence in his story and returned its verdict of guilty of murder in the first degree as above stated. In due course he received his sentence and the present appeal was prosecuted.

■ The defendant assigns seven separate errors claimed to have been committed by the trial court. He groups them under two points for argument. Under point I he first complains of the trial court's action in overruling his objection to deceased's wife being assisted to the witness stand by a young man dressed in the uniform of the United States Army who happened to be her son. She testified to having suffered from a broken back for many years and to having been in a state of practical invalidcy during such period, rendering it necessary that she be assisted in walking and in going up and down stairs. The sight of men in uniform at the time in question was commonplace. As a member of the armed forces, the son had no choice but to appear in uniform. Prejudice to defendant from the incident cannot be presumed and it is difficult to imagine any. The objection is wholly without merit.

■ The defendant next argues under Group one his assignments 2, 3, 4 and 5, which reduce themselves to a contention that the trial court erred in failing to grant defendant's request for an instructed verdict interposed both at the close of the state's case and again at the close of the whole case. The argument concerns itself with the contention that the evidence was insufficient to warrant submission of the case to the jury. In failing to stand on the ruling denying his motion made at the close of the State's case in chief, the defendant waived the error, if any, in the action taken by the trial court. This leaves for consideration the claimed error in denying a like motion interposed when the evidence was all in and both sides had rested.

Counsel for defendant have quoted in extenso the testimony of several witnesses for the state who observed the scuffle during which the shot was fired that killed the deceased and wounded his wife's nephew. It tended strongly to support his contention that defendant did not point the gun at, or handle the same in a threatening manner toward, Mrs. Craig Cornett, wife of the deceased, as claimed by her, thereby placing defendant in the act of committing a felony at the time of the homicide in violation of 1941 Comp., § 41-1703, and constituting first degree murder under 1941 Comp., § 41-2404.

This testimony, however, is to be weighed against the positive testimony of the only member of the Cornett party testifying, Mrs. Cornett herself, that immediately upon coming inside the cafe the defendant did point the gun at and toward her. Her testimony is corroborated in part, at least, by that of Mrs. Hazel Denton, a waitress in the cafe, who actually saw defendant as he entered the cafe with the gun under his left arm "holding it sort of up and then the gun went over towards the table kind of (the Cornett table) and then Mrs. Smith came over and grabbed the gun and held it down and then the gun came around like that" (demonstrating); also by still another witness who, immediately after defendant entered the cafe armed with an automatic rifle, heard his wife exclaim: "Do not do that," the instant before she seized the barrel of his rifle and began pressing the end of it toward the floor.

 It was the jury's province to appraise the testimony of these various witnesses and its privilege, if it saw fit, to believe that of Mrs. Cornett with its partial corroboration, as coming from a person in better position than all others to observe what actually did take place. The finding, within the jury's verdict, that defendant was actually engaged in the commission of a felony at the time of the homicide cannot be disturbed as lacking substantial support in the evidence. The trial court correctly instructed the jury that, under such circumstances, the fact of the gun being accidentally discharged, if it was, would in no way reduce the homicide below the grade of first degree murder.

 In his argument under Group two, so designated by him, counsel for defendant complain, among other things, of the trial court's failure to give certain instructions, namely, defendant's requested instructions 1, 2, 4, 5 and 6. No argument is presented as to the requested instructions 1 and 5, counsel being satisfied with the mere statement that they do not waive the error assigned as to the instructions and we are asked to "search the record for any prejudicial error brought about by refusal" to give them. Of course, the error assigned as to these requested instructions must be deemed abandoned.

 The defendant's requested instruction No. 2 dealt with the question of his right to an acquittal on the theory of an accidental discharge of the gun during a scuffle. The court did not err in refusing this instruction. In the first place, it was not a proper instruction, if for no other reason, because it failed to recognize defendant's liability to conviction, even though the gun was accidentally discharged, if engaged in the commission of a felony or misdemeanor at the time of the homicide. In the second place, the trial court adequately instructed the jury in its general charge on the condi-

tions upon which defendant might be acquitted on the theory of an accidental killing.

■ What has been said regarding requested instruction No. 2, applies with equal force to defendant's requested instruction No. 4, dealing, as it does, with the defense of an accidental discharge of the gun, while not engaged in the commission of a felony. The subject was adequately covered in the court's general charge. The defendant was in no manner prejudiced by a refusal of this request. The testimony relied upon was insufficient to justify the giving of requested instruction No. 6. The court did not err in refusing it.

We come finally to perhaps the most serious claim of error presented by the defendant, his assignment of error No. 7, reading as follows:

"7. The court erred in not providing for the jury two forms of verdict to be returned on first degree murder, one of the forms to be returned in the event the defendant was found guilty of committing a murder while in the perpetration of a felony, and the other being guilty of murder under premeditation, malice and aforethought."

Counsel for defendant early recognize the handicap under which they labor in urging this assignment, for they make a deadly admission at the moment of presenting the assignment, to-wit:

"The record will show no objection to the form of verdict."

Accordingly, the plea for consideration of this claim of error is rested on the ground of "fundmental error."

The information charged common law murder and, so far as material, reads:

"That the defendant, L. O. Smith, in the County of Eddy, State of New Mexico, on the 2nd day of August, 1945, did unlawfully, feloniously, wilfully, deliberately, and maliciously and premeditatedly, kill and murder Craig Cornett, a human being, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of New Mexico."

■ The state obviously, as shown by the course of the trial, was relying upon two separate theories for a conviction of first degree murder—(1) a murder committed in the perpetration of a felony and (2) common law murder with deliberation and premeditation. This fact could not have escaped defense counsel. It was, of course, permissible to introduce proof of murder committed in the perpetration of a felony under an indictment or information charging murder in the ordinary form. 40 C.J.S., Homicide, § 148, p. 1038.

The defendant at no time, by motion for bill of particulars or otherwise, sought to compel the state to disclose the theory upon which it would seek a conviction. Nor when the evidence was all in and it had become abundantly clear the state would seek to go to the jury on two theories, did the de-

fense ask to compel the state to elect upon which theory it would seek a verdict if, indeed, such an election could have been compelled. Cf. State v. Ochoa, 41 N.M. 589, 72 P.2d 609.

Counsel for defendant apparently think the matter should properly have been handled by submitting two separate forms of verdict whereby the jury might specify the theory upon which it returned a verdict of first degree murder, if it did. Perhaps they are right, but they did not ask the court to do so. Under such circumstances what are the defendant's rights and what is this court's duty? Especially, where the jury brings in a verdict of guilty of murder in the first degree and there is substantial evidence to support the verdict on either theory.

Counsel for defendant tell us we shall find the answer to these inquiries in State v. Garcia, 19 N.M. 414, 143 P. 1012, 1015. We quite agree and the answer calls for an affirmance. Speaking of fundamental error in that case and in an early application of the doctrine, this Court said:

"The restrictions of the statute apply to the parties, not to this court. This court, of course, will exercise this discretion very guardedly, and only where some fundamental right has been invaded, and never in aid of strictly legal, technical, or unsubstantial claims; nor will we consider the weight of evidence if any substantial evidence was submitted to support the verdict. *If substantial justice has been done,* parties must have duly taken and preserved exceptions in the lower court to the invasion of their legal right before we will notice them here." (Emphasis added).

See, also, State v. Klasner, 19 N.M. 479, 145 P. 679, Ann.Cas. 1917D, 824 and State v. Garcia, 46 N.M. 302, 128 P.2d 459.

 There is substantial support in the record for a verdict of murder in the first degree on either theory developed in the evidence. No doubt, the trial court would have granted a request to submit forms of verdict reflecting the theory upon which a verdict of first degree was rendered, if one should follow. If to be relied upon as fundamental error without mention, it would profit a defendant to withhold request, gamble on the verdict and then assign fundamental error, if convicted. The record before us fails to convince that substantial justice has not been done. The verdict under the evidence could easily have been one demanding the death penalty. The judgment will be affirmed.

It is so ordered.

BRICE, C. J., and LUJAN and COMPTON, JJ., concur.

McGHEE, J., having tried the case below, did not participate.