2008-NMSC-007

176 P.3d 1091

**STATE of New Mexico, Plaintiff–
Petitioner,**

v.

**John C. DAY, III, Defendant–Respondent.**

No. 29,953.

Supreme Court of New Mexico.

Jan. 8, 2008.

Donna M. Bevacqua–Young, Santa Fe, NM for Amicus Curiae, New Mexico District Attorneys' Association.

Robert M. White, Peter L. Dinelli, Richard J. Moran, Albuquerque, NM, for Amicus Curiae, City of Albuquerque.

Janice Stitziel Bloom, Irving, TX, for Amicus Curiae, Mothers Against Drunk Driving.

## OPINION

SERNA, Justice.

{1} John C. Day, III, (Defendant) was convicted of driving with an alcohol concentration of eight one-hundredths (0.08) or more in his breath or blood (third offense), known as per se DWI, and consumption or possession of an open container of an alcoholic beverage. The Court of Appeals reversed Defendant's conviction for per se DWI based on insufficient evidence because the State did not present scientific retrograde extrapolation evidence, which the Court of Appeals concluded was necessary to prove a nexus between Defendant's breath alcohol concentration ("BAC") test result of 0.08 taken one hour and six minutes after Defendant was arrested and Defendant's BAC at the time of driving. *State v. Day*, 2006–NMCA–124, ¶ 2, 140 N.M. 544, 144 P.3d 103, *cert. granted*, 2006–NMCERT–009, 140 N.M. 543, 144 P.3d 102. Our review of the evidence and pertinent case law compels our conclusion that Defendant's conviction for per se DWI was supported by sufficient evidence. Accordingly, we reverse the Court of Appeals for the reasons that follow.

Gary K. King, Attorney General, Stuart M. Bluestone, Chief Deputy Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, Scot D. Key, District Attorney, Alamogordo, NM, for Petitioner.

John Bigelow, Chief Public Defender, William A. O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

Kari E. Brandenburg, Gary J. Cade, Albuquerque, NM, for Amicus Curiae, Second Judicial District Attorney.

## I. FACTS

{2} On March 12, 2004, Defendant was charged by criminal complaint with (i) alternative counts of driving under the influence of intoxicating liquor (third offense), contrary to NMSA 1978, Sections 66–8–102(A) [hereinafter "the impairment charge"], 66–8–102(F)(2) (1953, as amended through 2003), or driving with an alcohol concentration of eight one-hundredths (0.08) or more in his breath or blood (third offense), contrary to NMSA 1978, Sections 66–8–102(C) [1] [herein-

---

1. Throughout its opinion, the Court of Appeals refers to the applicable per se DWI statute as

Section 66–8–102(C)(1). However, the applicable statute in effect at the time of Defendant's

after, "per se DWI"], 66–8–102(F)(2) (1953, as amended through 2003), and (ii) consumption or possession of an open container of an alcoholic beverage, contrary to NMSA 1978, Section 66–8–138 (1989, as amended through 2001).

{3} The charges arose from a November 20, 2003, stop by New Mexico State Police Officer Chad Casson (Officer Casson), who was stationed at U.S. 70 and Ruidoso Downs in Lincoln County, running stationary radar on passing cars. Defendant drove by, and Officer Casson noticed that the license plate lamp was not illuminated, as required by law. Thus, Officer Casson pulled Defendant over and advised him of the reason for the stop. As he was speaking to Defendant, Officer Casson smelled the odor of an alcoholic beverage coming from inside the vehicle. Officer Casson asked Defendant to exit the vehicle, and thereupon observed that the odor was emanating from Defendant. In addition, Officer Casson noticed that Defendant had bloodshot, watery eyes and that "[h]is speech was a little slurred." Defendant stated to Officer Casson that he had a few beers that evening, and Officer Casson recovered a half-full twelve-ounce can of Budweiser beer on the seat of the car which was still cool to the touch, "a freshly opened can," as Officer Casson described it. Officer Casson had not noticed any erratic driving, speeding, or traffic violations on the part of Defendant. The sole reason for the stop was Defendant's unilluminated license plate.

{4} Officer Casson had Defendant perform two field sobriety tests, both of which he failed. First, during the one-leg stand, Defendant "swayed side to side to try to keep his balance instead of keeping his hands by his side and watching his toe and counting to 30 as instructed." Then while performing the walk-and-turn test, Defendant "missed heel-to-toe and took ten steps instead of nine." Based on these observations, Officer Casson placed Defendant under arrest for driving while intoxicated.

{5} After placing Defendant under arrest, Officer Casson read Defendant the New Mexico Implied Consent Act. *See* NMSA 1978, §§ 66–8–105 to –112 (1978, as amended through 2003). BAC tests were administered on Defendant one hour and six minutes after he was arrested. The parties stipulated to the admission at trial of the logbook from the breathalyzer machine, on which Defendant's BAC was measured, as well as the standards that indicate the machine was in proper working order and correctly calibrated. In addition, the parties stipulated to admission of Defendant's breath test results, which were 0.08 on two different tests, as well as the time of the tests.

{6} After the State rested its case, defense counsel moved for a directed verdict with respect to the per se DWI charge. Defense counsel argued that, since Defendant's BAC was measured an hour and six minutes after he was arrested, the State was required to produce retrograde extrapolation or other evidence to prove Defendant's BAC at the time of driving. The trial court denied the motion, stating that "[i]n light of the fact that the breath test was taken within an hour I don't think I need extrapolation evidence." Defense counsel then moved for a directed verdict as to the impairment charge, which the trial court also denied.

arrest was Section 66–8–102(C) (1953, as amended through 2003). The Legislature amended Section 66–8–102 three times in 2003. The 2003 N.M. Laws, ch. 51, section 10, effective March 19, 2003, divided subsection (C) into two paragraphs: paragraph (1) limited per se DWI to persons twenty-one years of age or more, and paragraph (2) created a special per se DWI provision for drivers of commercial vehicles. The 2003 N.M. Laws, ch. 90, section 3, effective March 28, 2003, made changes to both paragraphs of subsection (C). The 2003 N.M. Laws, ch. 164, section 10, effective July 10, 2003, again rewrote subsection (C), deleting the provision regarding drivers of commercial vehicles and again consolidating the provision into a single subsection, to read in full, "It is unlawful for a person who has an alcohol concentration of eight one hundredths or more in his blood or breath to drive a vehicle within this state." The law was codified as such pursuant to NMSA 1978, Section 12–1–8(A) (1977), which provides that when the Legislature enacts two or more acts during the same session amending the same section of our statutes that "the last act signed by the governor shall be presumed to be the law and shall be compiled in the NMSA." Accordingly, Section 66–8–102(C) (1953, as amended through 2003) is the provision which applies to Defendant and the provision to which we refer when discussing Defendant's conviction.

{7} The defense presented two witnesses, Dr. Edward Reyes (Dr. Reyes) and Defendant. Dr. Reyes has a Ph.D. in pharmacology and is a semi-retired faculty member of the University of New Mexico School of Medicine's Department of Pharmacology. He testified as an expert regarding the effects of alcohol on the body, including how it is absorbed, distributed, metabolized, and eliminated by the body. Dr. Reyes explained that a person's BAC rises during the absorption period, which he stated "can take anywhere from 20 minutes to six hours," depending on what else is in the stomach. A full stomach can slow down the process of absorption, according to Dr. Reyes. Dr. Reyes acknowledged that the average absorption period lasts three hours and that the absorption takes place during the length of time that the person is drinking. After the alcohol reaches a concentration point, the BAC peaks. Then, the BAC begins to decline during metabolization and elimination by the body. Dr. Reyes described this process as the "concentration time curve."

{8} Dr. Reyes opined that Defendant was in the absorption phase at the time he was stopped. He based his opinion on the fact that there was a fresh, cold open container of beer in the car, from which he inferred that Defendant had been drinking recently before being stopped. Dr. Reyes, however, acknowledged that he did not know whom was drinking the beer, as both Defendant and a passenger were in the car. Dr. Reyes also acknowledged that he had no personal knowledge of what Defendant had eaten, how long Defendant had been drinking, his tolerance for alcohol, or his history of drinking. Dr. Reyes answered hypothetical questions, including the following:

Q: ... Hypothetically, if somebody ate a dinner, drank a few beers, immediately got into their vehicle and got onto the roadway and got stopped by a police officer and was later taken to a police station and tested, at the time of driving would you expect that person to be in the absorption phase or the elimination phase?

A: In the absorption phase.

Q: And why would that be?

A: Because he's got a full pot of food and alcohol in his stomach and he hasn't had time to have that stomach empty into the small intestine and have it absorbed.

Q: And I'll add to the facts of the hypothetical, from the time of driving to the time of testing was an hour to an hour and 15 minutes. Under those same facts of the hypothetical, would you expect somebody's blood alcohol level to be lower or higher at the time of driving than it was at the time of testing?

A: I would suspect his blood alcohol level to be lower when he was driving than at the time of testing.

{9} Defendant then took the stand. He testified that on the night he was arrested, he prepared a pasta dinner for himself and his two roommates. During the preparation of dinner, which Defendant testified took about two hours, he consumed two twelve-ounce Budweiser beers. Then while eating dinner, Defendant consumed another twelve-ounce Budweiser beer. Right after dinner, Defendant and one of his roommates drove to get cigarettes. Defendant was pulled over about two hundred yards from his home. He estimated that seven to ten minutes had elapsed between the time he finished dinner and was pulled over.

{10} After resting, defense counsel again moved for a directed verdict with respect to the per se DWI charge, arguing that the State had presented no extrapolation evidence to relate Defendant's 0.08 BAC test results back to the time of driving and that Dr. Reyes had testified that Defendant's BAC was likely lower at the time of driving than at the time of testing. The trial court again denied the motion, reasoning in part that "[t]he case law that we've been through indicates that if we're within two hours then I don't have to have extrapolation evidence, at least that's how I read it." Defense counsel also renewed his motion for a directed verdict regarding the impairment charge, which the trial court again denied.

{11} The jury was instructed that it could return a verdict of guilty only with respect to one of the DWI alternatives, the impairment charge or per se DWI. The jury returned a verdict of guilty as to the charge of per se DWI and consumption or possession of an open container. Defendant appealed his con-

viction for per se DWI, claiming it was not supported by sufficient evidence, particularly due to the lack of extrapolation evidence relating Defendant's BAC results back to the time of driving. Defendant further argued that the trial court erred in denying his motion to dismiss based on alleged violations of the six-month rule and for alleged speedy trial right violations. Defendant did not appeal his conviction for consumption or possession of an open container.

{12} In a published opinion, the Court of Appeals reversed Defendant's conviction for per se DWI based on insufficient evidence. *Day*, 2006–NMCA–124, ¶ 2, 140 N.M. 544, 144 P.3d 103. The Court held that

> absent scientific evidence of the alcohol absorption and elimination processes tied to the facts that must be considered in scientifically evaluating Defendant's alcohol absorption rate, the jury could not have rationally inferred that Defendant had a .08 alcohol content at the time of driving based on a .08 breath test reading taken an hour and six minutes later.

*Id.* ¶ 2. The Court concluded that "the State failed to prove the required nexus between Defendant's later-taken .08 breath test result and his alcohol level at the time he was driving." *Id.* The Court went on to note that

> many traffic stop circumstances exist in which the State seeks to prove a breath alcohol content (BAC) of .08 or more at the time of driving based on the result of a later-taken test reading. In many of these cases the later reading may be at or not far above .08 BAC. And, from a review of literature on the subject, it is equally apparent that in these instances, a scientific retrograde extrapolation process is necessary in order to arrive at a rational inference of the BAC level at the time of driving.

*Id.* ¶ 3.

{13} However, the Court of Appeals also noted that scientific retrograde extrapolation evidence would not always be required. For example, in some cases, "common experience bearing on behavior of an intoxicated person might be sufficient, with a later-taken BAC reading, to prove a .08 or more BAC at the time of driving." *Id.* ¶ 22 (citing *State v. Baldwin*, 2001–NMCA–063, ¶ 16, 130 N.M. 705, 30 P.3d 394). Additionally, the Court

did not foreclose the case in which a BAC test result "obtained immediately after a traffic stop" or an "extremely high test result" may provide sufficient evidence to support a per se DWI conviction. *Id.* ¶ 23. However, the Court pointed out that none of these scenarios reflected the facts of the instant case. *Id.*

{14} The State appealed. We granted certiorari to review whether sufficient evidence supported Defendant's conviction for per se DWI and whether the Court of Appeals erred in requiring the State to present scientific retrograde extrapolation evidence in this case. *Day*, 2006–NMCERT–009, 140 N.M. 543, 144 P.3d 102.

## II. STANDARD OF REVIEW

■ {15} We review Defendant's conviction for per se DWI to determine whether it is supported by sufficient evidence. *See State v. Sutphin*, 107 N.M. 126, 130–31, 753 P.2d 1314, 1318–19 (1988). Our review requires us to examine the record to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Id.* at 131, 753 P.2d at 1319. We view the evidence in the light most favorable to the verdict, "resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* Our role is not to weigh the evidence, nor do we "substitute [our] judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Id.* In our assessment, we recognize that the fact finder is free to reject the defendant's version of the events. *Id.* In sum, we will not disturb the jury's verdict if we conclude it to be supported by substantial evidence. *Id.*

## III. DEFENDANT'S CONVICTION FOR PER SE DWI IS SUPPORTED BY SUBSTANTIAL EVIDENCE

■ {16} At the time of Defendant's arrest in 2003, the per se DWI statutory provision, read as follows, "It is unlawful for a person who has an alcohol concentration of eight one hundredths or more in his blood or breath to drive a vehicle within this state."

Section 66–8–102(C) (1953, as amended through 2003). Section 66–8–102(C) is considered a per se statute because "violation is established by the BAC without any evidence of impairment." *Bierner v. State, Taxation and Revenue Dep't, Motor Vehicle Div.*, 113 N.M. 696, 698, 831 P.2d 995, 997 (Ct.App. 1992). Our case law has consistently held that the per se DWI offense "relates to the time of driving." *State v. Christmas*, 2002–NMCA–020, ¶ 20, 131 N.M. 591, 40 P.3d 1035. This requirement is reflected in the relevant uniform jury instruction for Section 66–8–102(C), UJI 14–4503 NMRA, which states that the defendant must have a BAC level of 0.08 or more "[a]t that time," i.e., at the time the defendant was driving. *See Christmas*, 2002–NMCA–020, ¶ 20, 131 N.M. 591, 40 P.3d 1035. Indeed, in *State v. Baldwin*, the Court of Appeals stated unequivocally that "[t]iming is an essential element of the crime" of per se DWI. 2001–NMCA–063, ¶ 8. Therefore, "[t]he State must prove a nexus between a BAC of 0.08 or more and the time 'defendant operated a motor vehicle.'" *Id.* (quoting UJI 14–4503). This is so because "a BAC reading from a laboratory test is just a sterile number; by itself it tells us nothing about a driver's condition hours earlier." *Id.* ¶ 17.

{17} The issue we confront in the instant case is whether Defendant's per se DWI conviction, based in part on a 0.08 BAC result from one hour and six minutes after Defendant's arrest, is supported by substantial evidence. Unlike the Court of Appeals, we discern nothing novel in this issue and thus find it unnecessary to stray from existing precedent, which we conclude resolves our inquiry.

{18} We find *State v. Christmas*, in which the Court of Appeals affirmed the defendant's conviction for per se DWI, particularly instructive in our review of the instant case. 2002–NMCA–020, ¶ 2, 131 N.M. 591, 40 P.3d 1035. Therein, the defendant was pulled over after a police officer noticed his license plate was not illuminated, and the officer observed the defendant's vehicle crossing the center line. *Id.* ¶ 3. Upon pulling the defendant over, the officer noticed the odor of alcohol and asked the defendant if he had been drinking. *Id.* The defendant "acknowledged that he had consumed alcohol earlier, but

said he had 'slept some' in the interim before driving." *Id.* The officer then had the defendant perform three field sobriety tests, and the results were mixed, with the defendant failing one and performing marginally on another. *Id.* ¶¶ 3–5. In addition, the officer testified that the defendant "appeared 'agitated,' displayed an 'aggravated attitude,' and seemed 'a little bit nervous.'" *Id.* ¶ 5. The officer arrested the defendant and took him to the police station where a BAC test was administered "about an hour after [the][d]efendant had stopped driving." *Id.* ¶ 6. The defendant's results were 0.09 and 0.08. *Id.*

{19} The defendant challenged the sufficiency of the evidence to support his conviction for per se DWI, contending that the State failed to relate his BAC results to the time of driving, an hour earlier. *Id.* ¶ 19. The Court focused on the timing of the BAC test and framed the issue as "whether a lapse of only an hour [as opposed to the two hours and fifteen minutes in *Baldwin* ] require[d] specific relation-back testimony or other corroborating evidence as in *Baldwin.*" *Id.* ¶ 20. The Court contrasted the case to cases in other jurisdictions, as well as New Mexico cases such as *Baldwin*, in which the courts "reversed DWI convictions based upon a lack of relation-back evidence . . . when there is a significant time lapse between the time of driving and the time of BAC testing, usually two hours or more." *Id.* ¶¶ 21–22. Since the defendant's BAC was measured only one hour after driving, "it [is] less difficult to establish a relation-back nexus than if more time had elapsed." *Id.* ¶ 22 (citing *Baldwin*, 2001–NMCA–063, ¶ 18, 130 N.M. 705, 30 P.3d 394). As the Legislature, at that time, had not prescribed a statutory relation-back time period "so that a jury could rely on a subsequent, timely BAC test result as a presumptive surrogate for what the BAC likely was at the time of driving," the Court "look[ed] to legislative intent for guidance with regard to what the legislature envisioned when it presented a per se offense at the time of driving." *Id.*

{20} The Court enumerated the multiple events that must occur between the time of driving and BAC testing, thus evidencing the inevitability of "[s]ome reasonable delay"

which the Legislature necessarily must have had in mind, e.g., "the time required to stop and question a suspect, conduct field sobriety testing, complete an arrest, transport the suspect to a testing site with a properly calibrated breathalyzer machine, and conduct the requisite twenty-minute observation period before breath testing." *Id.* ¶ 23 (citing *State v. Gardner*, 1998–NMCA–160, ¶ 5, 126 N.M. 125, 967 P.2d 465). As the Court put it, "[i]t would be foolhardy to think that the legislature contemplated that BAC readings could be obtained simultaneously with the act of driving." *Id.* Thus, the Court concluded "that both the legislature and [this Court] contemplated tolerance of some reasonable and inevitable delay in testing, and intended that otherwise valid test results would be admitted into evidence notwithstanding such a delay." *Id.*

{21} In reviewing the sufficiency of the evidence, the Court considered "a sliding scale" of "the factors discussed in *Baldwin*," namely the length of the delay; the extent to which the BAC test results exceed the statutory limit; and "the existence of other corroborating behavioral evidence." *Id.* ¶ 24. With respect to the delay, the Court noted that it "did not exceed one hour," and "[i]t is difficult to envision a reasonable delay of anything less than an hour from the time of driving to the time of testing, given all the events that must usually take place in the interim." *Id.* ¶ 25. In addition, evidence was presented "from which the jury could have drawn a rational inference that [the][d]efendant's BAC at the time of driving was actually higher than the .08 and .09 readings obtained at the time of testing," *id.*, including the testimony of the same expert, Dr. Reyes, who testified in the instant case, *id.* ¶ 26.

{22} As in the instant case, Dr. Reyes testified with respect to the absorption, peaking, and elimination phases of alcohol metabolization and how difficult it is to extrapolate back from a BAC test to the time of driving. *Id.* Although Dr. Reyes "warned against trying to use a subsequent BAC test score to calculate an individual's BAC at the time of driving," *id.* ¶ 26, the Court noted that the jury was not bound by Dr. Reyes' conclusion, *id.* ¶ 27 (citing *State v. Chamberlain*, 112 N.M. 723, 732, 819 P.2d 673, 682 (1991)).

Indeed, the jury could have rejected the defendant's version of the facts, whilst being informed by Dr. Reyes' explanation of the "alcohol time response curve." *Id.* The Court explained as follows:

> Based on [the][d]efendant's own admission that he had "slept some" after drinking but before taking the wheel, coupled with the additional hour that passed before BAC testing, and based on Dr. Reyes' testimony, the jury could reasonably have inferred that [the][d]efendant's BAC had "peaked" earlier in the evening, and that he was well into the "elimination stage" at the time of BAC testing. If this was the case, then [the][d]efendant's BAC level at the time of driving would have been higher, not lower, than the BAC level recorded by the breathalyzer tests. This inference, fully supported by the evidence, would support a conclusion that [the][d]efendant was driving with a BAC over the legal limit. [The][d]efendant offered no specific evidence to support a theory that his blood-alcohol level may have "peaked" at some point after he actually operated his vehicle. In addition, the evidence was that [the][d]efendant failed one field sobriety test, was given the benefit of the doubt on another on which his performance was marginal, was driving erratically, and responded in a nervous and agitated way when stopped.

*Id.* ¶ 28 (internal citation omitted). The Court concluded this to be sufficient evidence to support the defendant's per se DWI conviction. *Id.* ¶ 29.

{23} We now turn to an examination of the evidence in the instant case "to ascertain whether a rational jury could have drawn reasonable inferences regarding Defendant's BAC at the time of driving." *State v. Martinez*, 2002–NMCA–043, ¶ 13, 132 N.M. 101, 45 P.3d 41. The facts of the instant case are strikingly similar to those in *Christmas* and so shall be our conclusion. Officer Casson pulled Defendant over for an unilluminated license plate, although, unlike in *Christmas*, he reported no erratic driving. Officer Casson likewise smelled an odor of alcohol emanating from Defendant, and Defendant admitted that he had been drinking. Like the

defendant in *Christmas,* Defendant performed poorly on his field sobriety tests, failing both of them. While Defendant did not display the agitated, nervous, or aggravated attitude of the defendant in *Christmas,* he displayed several *indicia* of intoxication, including bloodshot, watery eyes and slurred speech.

{24} Furthermore, as in *Christmas,* the jury in the instant case was not bound by Dr. Reyes' conclusion that Defendant was still in the absorption phase when he was driving. Rather, viewed in the light most favorable to the verdict, Dr. Reyes' testimony regarding the "concentration time curve" (the "alcohol time response curve" in *Christmas* ) could well have informed the jury's verdict that Defendant's BAC was 0.08 or higher at the time of driving. Here, as in *Christmas,* the combination of Defendant's own admission that he had been drinking for at least two hours while preparing and eating dinner before getting behind the wheel to buy cigarettes, coupled with the hour and six minutes that elapsed before Defendant's BAC was tested, and based on Dr. Reyes' testimony regarding the "concentration time curve," the jury could reasonably have inferred, as it did in *Christmas,* that Defendant's BAC had peaked earlier in the evening and that Defendant was already in the elimination and metabolization stage at the time his BAC was tested. Indeed, Dr. Reyes testified that the absorption phase can last anywhere from twenty minutes to six hours, with three hours being the average. Viewing the evidence in the light most favorable to the verdict, Defendant would have fallen into that time period, and the jury could reasonably have concluded that he was already in the elimination and metabolization stage. It would then follow that Defendant's BAC level at the time of driving would have been higher, not lower, than the BAC level recorded following his arrest. Indulging this inference, which the evidence fully supports, the jury could reasonably have concluded that Defendant's BAC at the time of driving was 0.08 or higher.

{25} Indeed, the only basis for Dr. Reyes' opinion that Defendant was in the absorption phase was the fresh open container of beer in the car, i.e., Dr. Reyes inferred from the open container that Defendant was drinking up to the time he was pulled over. However, viewing the evidence in the light most favorable to the verdict, the jury could have inferred that the passenger, not Defendant, was drinking from the open container. Furthermore, other corroborating behavioral evidence was presented, namely that Defendant failed the two field sobriety tests and that he had bloodshot, watery eyes and slurred speech, which could have helped to guide the jury's understanding of the concentration time curve and Defendant's position on it at the time of driving.

{26} Normally, the State bears the burden of proving the defendant's BAC at the time of driving. *Baldwin,* 2001–NMCA–063, ¶ 7, 130 N.M. 705, 30 P.3d 394; *see also* UJI 14–4503. Because the State did not present its own scientific retrograde extrapolation evidence, the State failed to meet its burden of proof at the close of its case. Had Defendant not presented any additional evidence, we would be unable to uphold his conviction. On review, however, we consider all of the evidence presented in the case. *State v. Clifford,* 117 N.M. 508, 512, 873 P.2d 254, 258 (1994). Defendant moved for a directed verdict at the close of the State's case, which was denied. Defendant then proceeded to present his own evidence. In so doing, he waived any claim that this denial of the directed verdict was in error or that the evidence at the close of the State's case was insufficient for submission to the jury. *See State v. Smith,* 51 N.M. 184, 189, 181 P.2d 800, 803 (1947). Based on the evidence presented and the testimony of Dr. Reyes, the jury had both the information and the tools necessary to reach the verdict it did. Therefore, we conclude that Defendant's conviction for per se DWI was supported by substantial evidence.

{27} We also take this occasion to note a recent statutory amendment by our Legislature, which will foreclose cases such as the instant one in the future. Until the 2007 session, the Legislature had not specified an outer time limit for a BAC test taken after driving to prove a defendant's BAC at the time of driving, as required by our per se DWI statute. Given the inevitability of delay between the time of driving and the time of

BAC testing, *Christmas*, 2002–NMCA–020, ¶ 23, 131 N.M. 591, 40 P.3d 1035, as well as our case law's recognition of the difficulty of extrapolating backward in time, even for experts, *Baldwin*, 2001–NMCA–063, ¶ 17, 130 N.M. 705, 30 P.3d 394, the Court of Appeals had twice called on the Legislature "to create a statutory inference that a 0.08 BAC within a specified time, say two or three hours after driving, is prima facie evidence of a *per se* violation of Section 66–8–102(C), which a defendant could then try to rebut." *Id.* ¶ 19; *see also Christmas*, 2002–NMCA–020, ¶ 22, 131 N.M. 591, 40 P.3d 1035. In the 2007 session, the Legislature amended Section 66–8–102(C)(1) [2] to read:

It is unlawful for a person to drive a vehicle in this state if the person has an alcohol concentration of eight one hundredths or more in the person's blood or breath *within three hours of driving* the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle.

2007 N.M. Laws, ch. 322, § 1 (emphasis added); *see also* Section 66–8–102(C)(1) (1953, as amended through 2007).

{28} While Defendant's BAC tests were taken within one hour and six minutes of driving and would easily fall within that three-hour time limit, the amendment to our per se DWI statute will not eliminate the need to show a nexus or to relate a BAC test result to the time of driving in all situations. Indeed, we foresee at least two situations in which scientific retrograde extrapolation evidence would be necessary for the State to meet its burden.

■ {29} In the first situation, the State can use scientific retrograde extrapolation evidence to prove that a BAC test taken after three hours and below 0.08 shows that the defendant had an actual BAC of 0.08 or higher within three hours of driving. Similarly, a defendant can use retrograde extrapolation evidence to show that a BAC test taken after three hours and above 0.08 shows that the defendant had an actual BAC of less than 0.08 within three hours of driving.

■ {30} In the second situation, the State can use scientific retrograde extrapolation evidence to prove that a BAC test taken within three hours but below 0.08 shows that the defendant had an actual BAC of 0.08 or higher within three hours. For example, a test taken two hours and forty-five minutes after driving might show a BAC of 0.07. If the defendant was in the elimination phase for some or all of the time before the test, then his or her BAC would have been higher before the test. Of course, aggravated DWI within the three-hour period will also be an issue.

{31} In either of these situations, the party seeking to prove a BAC at an earlier time must use scientific retrograde extrapolation evidence. A BAC test is a quantitative measurement of a physical property. *See Baldwin*, 2001–NMCA–063, ¶ 17, 130 N.M. 705, 30 P.3d 394. To extrapolate from the BAC at the time of testing to the BAC at an earlier time, one must know the rate at which the BAC changes over time. *See Christmas*, 2002–NMCA–020, ¶ 26, 131 N.M. 591, 40 P.3d 1035. This rate is not constant, but varies over time, describing a curve rather than a straight line. *See id.* Determining the shape of the curve is a science. *See* Jim Frasier, Annotation, *Admissibility and Sufficiency of Extrapolation Evidence in DUI Prosecutions*, 119 A.L.R.5th 379 (2004). The exact shape of the curve depends on a number of factors, including inter alia the type of alcohol consumed, the time period over which the alcohol was consumed, the time of the last drink, and when and what the defendant last ate. *See Christmas*, 2002–NMCA–020, ¶ 26, 131 N.M. 591, 40 P.3d 1035. These factors can be quantified, although sometimes the supporting evidence may not be readily available. However, the burden of finding such evidence is appropriate for the State to bear when attempting to convict a person suspected of any crime, and should the State choose to pursue a per se DWI conviction, it must take the type of investigatory work required to prove a defendant's guilt beyond a reasonable doubt.

---

**2.** In 2004, Section 66–8–102(C) was divided into two paragraphs: (C)(1) prohibits driving a regular vehicle with a BAC of 0.08 or more; (C)(2) prohibits driving a commercial vehicle with a

BAC of 0.04 or more. 2004 N.M. Laws, ch. 42, § 1; *see* NMSA 1978, § 66–8–102(C)(1) (1953, as amended through 2004).

{32} In addition, we must clarify the appropriate use of corroborating behavioral evidence. *See Day*, 2006–NMCA–124, ¶¶ 22, 26, 140 N.M. 544, 144 P.3d 103. Such evidence may be of limited relevance in the scientific retrograde extrapolation analysis. However, because behavioral evidence is qualitative, it should be used with care to support a quantitative analysis. Contrary to what the Court of Appeals stated below, *see id.*, behavioral evidence by itself cannot be sufficient to show the required nexus between a BAC test and an earlier BAC. It may, however, have limited relevance when the factors that underlie the shape of the concentration time curve are subject to conflicting testimony. For example, there may be conflicting testimony over whether a defendant had just started drinking or had been drinking for some period of time. Watery eyes and slurred speech, as in the instant case, would support an inference that the defendant had not just started drinking. This inference would support the assumptions used to generate the concentration time curve. The evidence may not show the precise times when the defendant drank, but it might help narrow them down and thus make the concentration time curve more accurate.

## IV.  CONCLUSION

{33} For the reasons set forth above, we reverse the Court of Appeals and affirm Defendant's conviction for per se DWI. Accordingly, the question of whether Defendant's prosecution constituted a violation of the sixth-month rule must be answered. However, because the parties have not briefed the issue to this Court, we remand to the Court of Appeals for a determination of that issue.

{34} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PETRA JIMENEZ MAES, RICHARD C. BOSSON, Justices, and RICHARD E. RANSOM (J. Pro Tem.).