LIU, J.,
Concurring. — I write separately to clarify the limited way in which evidence of behavioral impairment was relevant in this case to determining whether the driver’s blood-alcohol concentration (BAC) was 0.08 percent or higher at the time of arrest.
“ ‘Relevant evidence’ means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.” (Evid. Code, § 210.) Evidence that a driver’s behavior is not impaired tends to prove that her BAC was below 0.08 percent because we can rationally surmise, given the Legislature’s choice of the 0.08 percent BAC threshold, that a BAC of 0.08 percent is associated with an unsafe degree of impairment. But the converse is not true. Absent foundational evidence, a driver’s impairment does not generally tend to show that her BAC was 0.08 percent or higher because we have no way of correlating a specific type or degree of impairment with a particular BAC in a close case. The fact that 0.08 percent BAC is a threshold associated with an unsafe degree of impairment does not imply that no impairment occurs below that threshold. Without evidence that correlates particular behavioral impairments with particular BAC levels, signs of impairment do not generally establish that it is more likely a driver’s BAC is 0.08 percent as opposed to 0.06 or 0.07 percent. In other words, signs of impairment do not generally have a tendency in reason to prove a BAC of 0.08 percent or greater.
*1219 I say “generally” because sometimes evidence of impairment can be so extreme — for example, if the driver passed out at the scene of arrest — that the trier of fact may infer on the basis of common experience that the driver likely was driving with a BAC of 0.08 percent or higher. But there is no evidence of such extreme impairment in this case.
Today’s opinion properly refrains from suggesting that there is a correlation between evidence of impairment, including field sobriety test results, and a BAC of 0.08 percent or greater. The court cites a study commissioned by the National Highway Traffic Safety Administration (NHTSA) reporting that at least some field sobriety tests, properly administered, may accurately measure a BAC of 0.08 percent or greater. (Stuster & Burns, Final Rep. to NHTSA, Validation of the Standardized Field Sobriety Test Battery at BACs Below 0.10 Percent (1998) p. i.) But today’s opinion is careful to express no view about the merits of these claims (maj. opn., ante, at pp. 1212-1213), and other courts have questioned them. In U.S. v. Horn (D.Md. 2002) 185 F.Supp.2d 530, for example, the court undertook an extensive review of expert testimony and academic literature critiquing an earlier NHTSA study and concluded that “presently there is insufficient data to support these claims of accuracy” of field sobriety tests in predicting BAC. (Id. at p. 556.)
This lack of correlation between evidence of impairment and BAC does not mean that such evidence is always irrelevant. As the New Mexico Supreme Court has explained, “behavioral evidence by itself cannot be sufficient to show the required nexus between a BAC test and an earlier BAC. It may, however, have limited relevance when the factors that underlie the shape of the concentration time curve [showing the level of alcohol absorption over time] are subject to conflicting testimony.” (State v. Day (2008) 143 N.M. 359 [176 P.3d 1091, 1100].)
That is precisely how such evidence is relevant in this case. The results of the four tests of Ashley Jourdan Coffey’s BAC indicated that it was rising, and the parties offer competing explanations. Coffey argues that her BAC was in fact rising and that her BAC must have been below 0.08 percent at the time of her arrest. By contrast, the Attorney General attributes the rising BAC test results to the test’s margin of error (which would explain the 0.01 percent rise within three minutes between the first and second breath tests) and to the fact that the last two tests were blood tests rather than breath tests and thus produced slightly different results. The Attorney General asserts that the testimony of Coffey’s expert, Jay Williams, lacked key findings to support a rising BAC theory, such as when Coffey had her last drink before getting behind the wheel, her food intake, her weight, and other factors. As the Department of Motor Vehicles (DMV) hearing officer concluded, Williams did not show that other experts in the scientific community had reached similar conclusions based on facts similar to those in this record.
*1220 Evidence of Coffey’s impairment was relevant to deciding which theory of rising BAC was more likely correct. Such evidence was relevant in the following limited sense; The fact that Coffey did show signs of impairment made her theory of rising BAC weaker than if Coffey had not shown signs of impairment at the time of her arrest. (See maj. opn., ante, at p. 1216 [“[T]he non-chemical-test evidence was admissible to rebut plaintiff’s proffered defense that her BAC was low at the time she was driving and only later rose to exceed the legal limit.”].) This point, on which all members of the court agree, renders unnecessary any broader suggestion that in a typical administrative per se proceeding, evidence of a driver’s impairment tends to prove a BAC level of 0.08 percent or higher at the time of arrest. Here the evidence of Coffey’s impairment was, like the other weaknesses in the expert’s testimony discussed above, relevant to the DMV hearing officer’s conclusion that the rising BAC theory was “too speculative.”
Because the evidence of Coffey’s impairment was relevant in the limited way just described, and because the evidence is sufficient to support the determinations of the DMV hearing officer and the trial court that Coffey drove with a BAC at or above 0.08 percent, I concur in the judgment.
Appellant’s petition for a rehearing was denied May 20, 2015.